UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO SALINAS, CDCR #V-38786,<br><br>                      Plaintiff,<br><br>vs.<br><br>W.L. MONTGOMERY; F. HODO; SERGEANT PANDURO; LIEUTENANT SOLOMON,<br><br>                      Defendant. | Case No.: 3:19-cv-0744-AJB-RBB<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. No. 2]**<br><br>**AND**<br><br>**2) DISMISSING CLAIMS AND DEFENDANTS FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

On April 22, 2019, Armando Salinas ("Plaintiff"), currently incarcerated at Calipatria State Prison ("CAL") located in Calipatria, California, and proceeding pro se, filed a civil rights complaint ("Compl.") pursuant to 42 U.S.C. § 1983. *See* Doc. No. 1. In addition, Plaintiff has submitted a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 2.

///

## I. Plaintiff's Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his IFP Motion, Plaintiff has submitted a prison certificate authorized by a CAL accounting officer. *See* Doc. No. 2 at 4; 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. This certificate attests that Plaintiff carried an average monthly balance of $78.35 and had average monthly deposits of $61.67 to his account over the 6-month period immediately preceding the filing of his Motion. At the time of filing, Plaintiff had an available balance of $60.00. *See* Doc. No. 2 at 4. Thus, the Court GRANTS Plaintiff's Motion to Proceed IFP (Doc. No. 2) and assesses his initial partial filing fee to be $15.67 pursuant to 28 U.S.C. § 1915(b)(1).

However, the Court will direct the Acting Secretary of the CDCR, or his designee, to collect this initial fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**II.    Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

    A.    Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that

the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Plaintiff's Allegations</u>

On February 10, 2018, Plaintiff, while housed at CAL, claims he was "walking to A-section to receive his dinner tray when he heard a loud commotion behind him." (Compl. at 6.) Plaintiff "turned around to see the commotion" and witnessed "multiple unidentified Black and Hispanic inmates fighting, striking each other." (*Id.*) Plaintiff claims he was "not a participant in the melee" and he was "confused and afraid." (*Id.*) Plaintiff then saw Correctional Officer A. Hodo "throw, without looking," two "blast grenades" directly into the area where Plaintiff was standing. (*Id.*)

4

As the "inmate combatants got closer to Plaintiff" who was "standing still, frightened," Hodo threw the "first grenade which landed at his feet." (*Id.*) "Immediately thereafter," Hodo "threw the second grenade directly at Plaintiff, aiming at his head." (*Id.*) This grenade "exploded in Plaintiff's face, cutting open his mouth and knocking out three of his teeth, causing him to briefly blackout." (*Id.*)

As Plaintiff "regain[ed] his senses," he saw Hodo "aim his MK 46 spray-gun at him." (*Id.* at 7.) Plaintiff alleges Hodo "started spraying" him and other inmates "in their face and upper torso area. (*Id.*) Plaintiff was "in a prone position on his stomach" and began to "go in and out of consciousness" while "waiting for correctional officers to take him" for medical attention. (*Id.*) Correctional Sergeant A. Panduro "saw Plaintiff bleeding profusely" and ordered Correctional Officer Orozco to "place Plaintiff in flex-cuffs and escort him out of A-4 to wait for medical staff to arrive." (*Id.*)

Plaintiff "waited for at least five minutes bleeding and in pain" before receiving a "cursory medical evaluation" by "R.N. Palomar[2]." (*Id.*) Plaintiff was taken to the facility's "medical clinic" and then "taken via Medical Emergency Response Vehicle" to the "Institution's Triage Treatment Area." (*Id.*) From there, Plaintiff was transferred to Pioneers Memorial Hospital "for medical attention/evaluation for a lip laceration" and it was "determined that Plaintiff needed to see a specialist." (*Id.*) Plaintiff was "flown to U.C. San Diego for one day, where his lip was stitched-up." (*Id.*)

Plaintiff was returned to CAL and "placed in Administrative Segregation Unit" ("Ad-Seg"). (*Id.*) On February 12, 2018, Plaintiff was interviewed by Lieutenant Uribe[3] "regarding staff's use of unnecessary use of excessive force." (*Id.* at 7-8.) The interview was "video recorded" by Sergeant Villa[4]. (*Id.* at 8.) Plaintiff was issued a "Rules Violation Report" ("RVR") for "participation in a riot." (*Id.*) The RVR hearing was held

---

[2] RN Palomar is not a named Defendant.
[3] Lieutenant Uribe is not a named Defendant.
[4] Sergeant Villa is not a named Defendant.

on March 14, 2018 before Senior Hearing Officer Lieutenant S. Cowey[5]. (*See id.*) Plaintiff "plead not guilty" but Cowey "determined that the written and material evidence presented at the hearing was sufficient to support the charges." (*Id.*) As a result of being found guilty, Plaintiff was "assessed a good-time credit loss of 90 days" for participation in a riot. (*Id.*)

Plaintiff alleges that as a result of the "use of excessive force" on February 10, 2018, he has "lost three teeth," in addition to suffering from a "fractured jaw," and has trouble/difficulties eating and sleeping." (*Id*. at 8-9.) Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*at 9.)

C. <u>Personal Causation</u>

As an initial matter, the Court finds that Plaintiff has failed to state a claim against Warden Montgomery or Lieutenant Solomon. As to Warden Montgomery, Plaintiff's only allegations are that he "failed to adequately train correctional staff under his control." Compl. at 2. As to Lieutenant Solomon, Plaintiff claims she "failed to adequately train/oversee correctional staff under her control." *Id.* There are no other specific factual allegations as to either of these Defendants in the body of the Complaint.

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of particularity overt acts which defendants engaged in" in order to state a claim). Thus, in order to avoid the respondeat superior bar, Plaintiff must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, including personal acts by each

---

[5] Lieutenant Cowey is not a named Defendant.

individual defendant which show a direct causal connection to a violation of specific constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted).

Plaintiff's Complaint sets forth no facts which might be liberally construed to support any individualized constitutional claim against Warden Montgomery or Lieutenant Solomon that would establish any causal connection between the CAL officials who are alleged to have personally used excessive force against him. Therefore, the Court finds sua sponte dismissal of Defendants Montgomery and Solomon is required pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Lopez*, 203 F.3d at 1126–27; *Wilhelm*, 680 F.3d at 1121.

### D. Fourteenth Amendment Due Process claims

To the extent Plaintiff alleges Defendants violated his due process rights by presiding over his disciplinary hearing, *see* Compl. at 8, he fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Plaintiff's due process claims require sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) because he fails to allege facts sufficient to show that the deprivations he allegedly suffered created a liberty interest sufficient to invoke *Wolff's* procedural safeguards. While Plaintiff alleges he was "assessed a good-time credit loss of 90 days," he offers no other facts from which the Court could find that

he suffered an "atypical and significant" hardship as result of the disciplinary process. Even if he were able to allege facts sufficient to find that he had a protected liberty interest, there are no allegations that any of the due process protections required by *Wolff* were not met.

Based on these allegations, the Court finds that Plaintiff's Complaint contains no "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants' actions "presented a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence," or caused him to suffer an "atypical" or "significant hardship." *Sandin*, 515 U.S. at 484-85.

Accordingly, Plaintiff's Fourteenth Amendment due process claims are DISMISSED for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

### E. Eighth Amendment medical care claims

Plaintiff alleges Defendant Panduro "saw Plaintiff bleeding profusely and ordered C/O Orozco to place Plaintiff in flex-cuffs and escort him out of A-4 to wait for medical staff to arrive." (Compl. at 7.)

Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal quotation marks omitted). "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), citing *Estelle*, 429 U.S. at 103-104. "A 'serious' medical need exists if the failure to treat

a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

At the screening stage of these proceedings, the Court Plaintiff's claims are sufficient to show objectively serious medical needs. *See McGuckin*, 974 F.2d at 1059.

However, even assuming Plaintiff's was suffering from sufficiently serious conditions, his Complaint nevertheless fails to include any further "factual content" to show that Defendant Panduro demonstrated "deliberate indifference" to his needs. *McGuckin*, 974 F.2d at 1060; *Jett*, 439 F.3d at 1096; *Iqbal*, 556 U.S. at 678. "Deliberate indifference is a high legal standard." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)).

To state an Eighth Amendment claim, Plaintiff's Complaint must contain "sufficient factual matter," and not just "labels and conclusions," *Iqbal*, 556 U.S. at 678, to plausibly show Defendant Pandura's "purposeful act or failure to respond to [his] pain or possible medical need," *and* the "harm caused by [this] indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). Plaintiff's Complaint appears to indicate that he was given medical attention approximately "five minutes" after Defendant Pandura saw that he was bleeding. There are no allegations that Defendant Pandura interfered with or caused a delay of Plaintiff's medical care.

Therefore, the Court finds that Plaintiff has failed to state an Eighth Amendment deliberate indifference to serious medical needs claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

### F. Excessive Force claims

As to Plaintiff's excessive force allegations against Defendant Hodo, however, the Court finds his Complaint contains plausible claims sufficient to survive the "low threshold" set for sua sponte screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Hudson v. McMillian*, 503 U.S. 1, 5, (1992) (unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (for claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.") (citing *Hudson*, 503 U.S. at 7).

### G. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his excessive force claims against Hodo only; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Hodo only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Hodo and dismiss the remaining claims and defendants.

### III. Conclusion and Orders

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2. **ORDERS** the Acting Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $15.67 initial filing fee assessed, if those funds are available at the time this Order is executed, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the

preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Acting Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. The Court **DISMISSES** all claims against Defendants Montgomery, Panduro, and Solomon for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5. The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the claims against Hodo only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

6. The Court **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983.

**IT IS SO ORDERED**.

Dated: May 21, 2019

Hon. Anthony J. Battaglia
United States District Judge